Good morning, so we have four cases to hear this morning, and if you haven't been here any this week already, you should rest assured that we've read your briefs, the authorities cited in your briefs, at least portions of the record. And we know about your case, so in the limited time that's available to you, when you come to the lectern, you should feel free to get straight to the heart of your argument. We're probably going to have some questions, but pay attention to our traffic lights. When the red light shines, it's time to end. Of course, if you're finishing an answer to a question from the court, you can feel free to finish that answer, but be mindful of our time. If we think you need more, we'll say so. So we're going to start with Jacobson v. Florida Secretary of State. Mr. Jusil. Thank you, Your Honor. May it please the Court. The district court states on pages 45 and 46 of its final order that candidates of the major parties in Florida receive an average primacy effect voter for approximately 5% when listed first. Given Florida's history of election results in which the margin of victory or defeat is less than three to five percentage point, the district court concluded that Florida's ballot order statute has impacted plaintiffs' first and 14th Amendment rights by systematically allocating that small but statistically significant advantage to Republican candidates. Based on these findings, the district court struck down a 70-year-old, facially neutral Florida statute, which has benefited... I have a much more fundamental concern, which is, as I understand it, the Secretary of State does not prepare the ballots. Is that right? Yes, Your Honor. The Secretary of State does not prepare the ballots. So any injury to the plaintiffs, it's hard for me to see how it's traceable to the Secretary of State or redressable by the Secretary of State, and the district court appeared to recognize that by enjoining non-parties to this lawsuit. Isn't that the most fundamental, easy, clean problem with this injunction? Your Honor, it's one of several problems with the injunction. We have an injury issue as well. We have a justiciability issue, but on causation, if we frame it as that, that is an issue. However, I would note for the court that there are opinions from this court, most recently, the Democratic Party versus Lee that dealt with Florida's signature matching requirements, where the 11th Circuit said that the Secretary is Florida's chief financial, pardon me, chief elections officer, and so she was the appropriate party in a case concerning signature matching, which was done at the county level as well. So we agree with Your Honor. However, I simply note for the court that there is at least one 11th Circuit case that talks about the Secretary's role as the chief elections officer. It doesn't specifically address standing, but it had a similar factual scenario. Do you disagree that we're bound by Lee? Well, Your Honor, I believe you're bound by Lee to the extent that Lee has a specific rule that's been discussed, laid out, and thoroughly opined upon by this court. Lee, to my mind, presumes that the Secretary is the appropriate defendant in the case. Well, doesn't it hold that? Your Honor, it holds that the signature... The first issue in the case, it's under a heading that says, is the Secretary of State the proper defendant, right? Yes, Your Honor. And it holds that he or she is. Your Honor, it goes on to discuss what the statute says that Lee is an appropriate defendant and moves on and discusses the heart of the case. Well, why would we not be that way? Your Honor, Lee was a case where the procedural posture of the case was such that the intervenors in the case asked for an emergency stay from this court, and this court ended up issuing an opinion after that stay was requested. The State of Florida briefed not one word of the to the heart of the matter about whether or not the signature matching requirement was or wasn't constitutional. I do not believe that that is necessarily a well-thought-out reason holding from the case. It was a discussion of one of the preliminary issues before getting to the meat of the matter. So I don't think... But as a threshold issue, the court would have to decided that issue, right? Implicitly, yes. I thought we had Supreme Court precedent from the time of Chief Justice Marshall that says that if a court does not address a jurisdictional issue, that you cannot assume that the case stands for that proposition, that the court has jurisdiction. So isn't that right? Yes, Your Honor. We call those drive-by jurisdictional rulings. That's what the Supreme Court has called them, right? Yes, Your Honor. That is correct, and that's why I said... Justice Marshall said in 1805, no question was made in that case as to jurisdiction. It passed sub silentio, and the court does not consider itself as bound by that case. That's 1805. There's... I've got a list of Supreme Court precedent on that point, stretching back that long. Precisely, Your Honor. That's why I said it was implicit in the opinion, but it does not bind this court because it wasn't thoroughly discussed. There wasn't a reasoned, rational opinion there, and so that would be the reason why the prior panel rule does not apply in this instance. Say an opinion that says we're not going to stay an injunction for purposes of whether the Secretary of State is a proper defendant or not, is not a jurisdictional ruling, right? Yes, Your Honor. Your Honor, there are other issues, threshold issues that we believe control here as well. First and foremost, we're talking about parsing out a small but statistically significant advantage that might exist in some elections some of the time, and that goes to the heart of the matter in Rucho, where the issue was how do we parse out, if at all, partisan vote dilution, and the United States Supreme Court said that is not something that the federal court's ought to do. There's a second threshold issue, Your Honor, about the injury. Now, what we have here is a small but statistically significant injury that occurs in some elections some of the time. To some unidentified voter, to some unidentified candidate, and to some unidentified members of the democratic organizations, we do not believe that satisfies the injury prong of Article III standing. And finally, Your Honor, the Anderson verdict test offers no reprieve. At the end of the day, what we have here is a small but statistically significant injury that happens some of the time. How do we gauge that? How do we measure that? How do we compare that to some ideal? Let me ask you about the organizational standing of Priorities USA. They asserted a drain on resources theory of injury, and there was evidence in the record that because the democratic candidates were starting every election three to five points behind, they would have to invest more resources into the state to compensate for that difference. Why does that not allege injury for standing purposes? Your Honor, as I understand organizational standing for the organization itself, they have to be more specific. They can't simply say that we're going to divert resources to further our mission to elect Democrats. Their mission is to elect Democrats. They have to be more specific in how they're diverting those resources. When are they diverting those resources? This is an issue that's cropped up recently in the Shelby Advocates for Valid Elections versus Target case from the Sixth Circuit. There you had an organization and plaintiffs saying that we are going to need to divert our resources so that we can make sure the elections in Shelby County are run appropriately. Well, here the 30B6 witness said, he talked about the resources we expend to deal with the five percent harm done to the voters that we're reaching out and our efforts and costs associated with it. Your Honor, if you go on to read the 30B6 deposition, there's no discussion about what specific projects these resources were going to be diverted to. They did not distinguish which activities they would undertake because of the primacy effect. What are the Priorities USA doing differently because of the primacy effect? There is no answer to that question in the 30B6 deposition from Priorities USA, the DNC or anyone else. There is a vague reference to diversion of resources which unlike, say, the Common Cause versus Billups case from this court where the NAACP specifically said that we are diverting resources to inform people of the voter ID laws in Georgia. We're doing this, we're doing that, we're expending X, Y, and Z sums. There is no evidence like that here. Your Honor, I see . . . Thank you, Your Honor. I'm Jason Torczynski on behalf of the National Republican Senatorial Committee and Republican Governors Association. I'd like to echo what Mr. Gisiel said about Rucho. I also want to turn the Court's attention to Gil v. Whitford. That involved claims alleging violations of voting rights, but what the Court said in Gil v. Whitford was those violations had to be personal and specific to the voter that was bringing the case. And in this case, you had Ms. Jacobson testify at trial, and she sounds very confident that she was bringing the shockingly like Dr. Whitford where she said, oh, look, if you fix this problem, it's going to, you know, by going to county by county rotation, it'll be better for Democrats in other parts of the state, but it won't affect me because my Congressional District, my Senate District, my House District are all wholly contained in the same county and there'll be no rotation. So she said, eh, if I win, it's better for Democratic voters in other parts of the state. That's precisely like Dr. Whitford was situated in Gil v. Whitford. And for that reason, we think that the individual plaintiff has no standing to be in front of the Court. Similarly, the organization Does not necessarily benefit her though in statewide elections? So, Your Honor, the interesting thing about statewide elections, when you look at the literature and the testimony that was in evidence, is the evidence shows that in statewide elections, in the higher profile elections, which tend to be the statewide elections, the ballot order effect is minimal, if not present at all. And in fact, you know, if you think about the governor's race and Senate race in Florida in 2018, they were some of the most expensive races ever. So there was plenty of evidence in the record. All I'm wondering is about the Gil issue, though. I mean, that does distinguish her voting in the local races, doesn't it? Well, you know, here's the other problem with the statewide races. Does it or not? Does it distinguish it or not? I don't think it does, in part because she can't show that it really actually benefits her. Their proposed solution was ordering the counties by population and rotating. And even when you do that, you wind up with a 60-40 split of which party is going to lead the ballot based on the population of the counties. So they didn't really have a solution that eliminates the problem that they're claiming exists. And again, it's not clear from the evidence that they actually presented what the effect is in any particular race, what the magnitude of the effect is in any particular race. I mean, essentially, the evidence that they showed to back up these claims was so hypothetical and speculative that you're really in the sort of Gil and Clapper lines of precedent from the Supreme Court. I do want to make a quick point about D.N.C. v. Lee. That is still pending on whether there's been a request to vacate that opinion. That was a motions panel opinion because of the change in law in Florida on the signature match was mooted on appeal. And so there's really no opportunity to have that motions panel opinion reviewed. So there is a vacater request pending with this court. The NRSC is party to that and has asked the court to vacate there. So I do want to say we're still pending a ruling from this court on whether that motions panel opinion is still going to stand and be good law or whether it's going to be vacated under the Munsingware theory. Next, I'd like to turn to essentially the merits argument here. You know, the notion of the Anderson-Burdick balancing test being applicable where there's no harm to any individual's right to vote is a pretty stunning claim. There's no testimony in the record and no evidence that any voter voted mistakenly for the wrong candidate. There's no evidence in the record that any voter had a hard time voting for the candidate they wanted to vote for. There's no evidence in the record that any candidate had a hard time obtaining a ballot. Or again, no evidence, no individual voter who said, oh, I voted for candidate A just because they were first on the list. These are all sort of hypotheticals introduced by a professor who did a study who actually testified that he can't say what the effect was or if there was actually a ballot order effect in any particular race. And the way you, my understanding is your position and the Secretary's position is that the plaintiff's claim is really a partisan vote dilution claim. That is correct, Your Honor. They actually, initially they phrased it as a partisan vote dilution claim and sort of leaned heavily into that until Rucho. And now they're except that the Supreme Court said essentially equal protection claims don't really apply to political parties. Political parties are not powerless to act. Political parties can change. Well, it's their claim. I'm interested in hearing how they describe it. Yes. And I am, too, because they vacillated on exactly what their claim is and what the basis of their arguments here are. I guess with that, I will. Thank you, Mr. Chershensky. Ms. Cano. Good morning, Your Honors. Good morning. May it please the Court, Abba Cano for the appellees. There's nothing novel about the District Court's ruling below, either jurisdictionally or on the merits. I don't understand why you didn't sue the County Board of Supervisors. I don't understand that. I mean, that's who actually prepares the ballot, right? They're elected officials. They're not supervised in any meaningful sense that I can tell under Florida law by the Secretary of State. They're not removable by the Secretary of State. The governor could suspend them. That would be subject then to the Senate, as I understand it, the Florida Senate having to decide whether they're removable or not. They appear to be officials independent of the Secretary of State who are really the responsible parties here for what you're complaining about. Actually, Your Honor, I think the Secretary herself would disagree because she has not raised that issue as a problem for why she cannot somehow execute. I have to figure that out on my own, though. That's jurisdiction. Absolutely, Your Honor, but I think it's indicative that the Secretary does not believe that she does not have authority over the election laws of Florida. Of course, under this Court's precedent in Lee, which specifically did find that when— That's not a just jurisdictional ruling, though, is it? I believe it is, Your Honor. I don't believe that that was—you mentioned a drive-by ruling. That was not a—my understanding of a drive-by ruling is when a court assumes jurisdiction or doesn't say anything about jurisdiction and moves on to the merits. But here, the Court started its analysis— I don't see any discussion of the—I don't see the word jurisdiction, justiciability anywhere in the Lee opinion. I think the first—the very first paragraph of the argument or of the merits section specifically notes that before we move into the Anderson verdict analysis, let's make clear that the Secretary of State is the chief elections officer and the proper defendant to be sued in this election law matter, despite the fact that the administration of the challenge issue in that case was happening on a county-by-county basis. I also want to clarify, and because Your Honor brought up the issue of a drive-by jurisdictional ruling, that Man v. Powell by the Supreme Court was anything but. The defendants in Man v. Powell specifically argued to the Supreme Court that the political question doctrine barred federal courts from reviewing ballot order disputes between or among political parties. Yeah, but the problem is we have a summary affirmance there, and one of the arguments, as I understand it, was that the Secretary just had kind of unbridled discretion in picking who was going to be first, and that could be the basis for the Supreme Court affirming to—we just—we can't tell. And the Supreme Court tells us about summary affirmances that we're not to read too much into that, right? Well, correct, Your Honor. Well, the Supreme Court—under this Court's precedent, Man is binding—summary affirmances are binding for what they—for anything that is essential to sustain the judgment, right? So that—so you're correct, Your Honor, that we do not infer all sorts of things from an opinion. But here, there are things that are binding on this Court. On jurisdiction, the fact that it is the political question doctrine does not bar the justiciability of ballot order disputes, even among partisan interests. That was necessarily decided in Man when it summarily affirmed the District Court's finding of unconstitutionality. It was presented in Man, it was decided in Man, and it is therefore binding. When it came to the merits judgment in Man, the Court there specifically found that invariably awarding first position on the ballot to a certain category of candidates violated the right to equal protection and to fair and— you—this official, in the case of papers that come in at the same time, is just awarding it at a whim to the incumbent, and that's the problem. And so Man may not stand for any more than the proposition that you can't do that. Well, I believe that the actual judgment in Man is that breaking ties, a method of choosing—awarding first position by breaking ties in favor of the incumbents—that was the issue there—violated the other similarly situated candidate's right to fair and even-handed treatment under the Equal Protection Clause. That was the holding. That was the judgment in that case. So whatever else might have been ancillary to that, that I think is the essential holding that is binding on this Court. I think it's also worth—to that point, Your Honor— Is your claim a partisan vote dilution claim? It did seem that you argued that in the District Court, but that you've kind of studiously avoided using that label in this Court. Not at all, Your Honor. In fact, we have always presented in our complaint, and ever since, that there were different plaintiffs here—the individual plaintiffs and the party plaintiffs—and that they both had different brands of similar claims. The actual claim that the District Court ruled upon, and that's at issue in this Court, is the Equal Protection Claim brought under Anderson's verdict and decided under Anderson's verdict. So Ruscha was an Equal Protection Claim. At least it was ostensibly one, but it was nevertheless a partisan vote dilution claim as the Supreme Court saw it and held that it was non-justiciable. Just using the label Equal Protection doesn't help me very much. There's one-person, one-vote equal protection. There can be equal protection that—principles that apply to racial discrimination claims. What right is being burdened here? It's not access to the ballot, right? That everyone's on the ballot. That's correct, Your Honor. It's not a registration issue, right? So isn't it a partisan vote dilution issue? It's not, actually. There is an equal protection issue. The plaintiffs here specifically allege that similarly situated parties are being denied equal treatment in the allocation of first position on the ballot. The fact that Anderson itself makes clear that the burden does not have to specifically disenfranchise voters or limit access to the ballot, but it applies to the voting process itself. And the Supreme Court has stated in at least two instances, Your Honor. First, in Anderson v. Martin— How does it burden your voter clients' rights? Well, the individual voter's burden is a burden on their right to associate, to advance their political interests, because the statute provides an automatic head start for their opponents in every election. That sounds like dilution. That sounds like the problem is that as a result of the placement, the first placement on the ballot, that they're going to get this donkey vote or primacy effect that's going to dilute the voting strength of those who aren't in the first place on the ballot. And when it comes to the individual voters, that is the partisan vote dilution, isn't it? And that is true, certainly, but it is not a partisan gerrymandering claim. Your Honor, the state of Florida enacted a law that said that the party in power needed 45 percent of the vote to be elected, but the party out of power needed 55 percent of the vote to be elected. There'd be no questions that the voters for the party in power, their vote would be more valuable than it would be. They don't have to, their right to, or rather the party out of power, their right to associate with their co-partisans to advance political causes. Why should it make a difference whether the cause of the partisan vote dilution is how district lines are drawn versus where you place the candidates on the ballot? Because Rucho specifically talks about partisan gerrymandering cases, and the thing that is different about redistricting, in the redistricting context, that Rucho makes explicitly clear, is that in the redistricting context, partisanship is a feature, not a flaw. The Supreme Court has repeatedly said- So it is, that's true for the placement on the ballot. Not at all, Your Honor. The Supreme Court in the redistricting context has repeatedly said that partisanship for the sake of partisanship is a legitimate state interest in the redistricting context. Not so in almost any other election administration context at all, including in the ballot order context, where the fact that, I mean, Anderson-Burdick itself recognizes that in the electoral context, and we cite a number of cases on page 27 of our brief that that reiterate this concept. In the electoral context, partisanship for the sake of partisanship is not a legitimate state interest. Under Anderson-Burdick, it may perhaps in some instances be a necessary flaw pursuant to some other legitimate state interest. You've just got to place candidates and parties on the ballot in an order that is totally neutral as to partisanship and eliminates any advantage for any party. Is that right? I think it's consistent with Mann and the injunction in Mann. I just need to know, is that right or not? Yes, Your Honor. For similarly situated parties, as Mann said, and as we stated in our complaint- So all the parties, if there are nine parties that can get on the ballot in Florida, they all have an equal right to the rotation. Not at all, Your Honor. Why not? Well, certainly that's not our claim. Our claim is limited- Why not? Because our claim is a legal protection claim about similarly situated major parties. But for these purposes, all the parties are similarly situated because all of them are already have obtained access to the ballot. What makes them not similarly situated? Well, the Supreme Court's case law in Timmins and this court's case law in Fulani has made clear that states do have a legitimate interest in actually differentiating between major party candidates and minor party- That's true in terms of how they gain access. That is true. But none of those cases say that once they have already obtained access to the ballot, that in their treatment, that they're not entitled, if your theory is right, that they're not all similarly situated for purposes of equal protection. Well, I think by the design of the statute, those parties are not similarly situated to the Republican and the Democratic Party. Your problem is with the statute. You think the statute's improperly designed. I think what we have challenged, what we have not, we have challenged a portion of the statute that systematically favors the governor's party in assigning first position- And you're fine as long as it's rotations between the two major parties, but forget about the Libertarians and the Greens. We do not challenge the tiered ballot ordering system that was at issue in cases like Alcorn. Not talking about tiered. We're talking about if there's going to be rotation, doesn't rotation go to everybody? It can, Your Honor. But that would be a broader challenge than the one we brought. It would be a challenge more akin to the challenge brought in cases like Alcorn- I understand what the logical implication of your challenge would necessarily be. Logical implication of our challenge is that similarly situated parties are entitled to fair and equal treatment when it comes to the allocation- And so if all of them are already, all those parties have access to the ballot, we would be, we would have a good basis for saying they're all similarly situated. If a court were to find that they were similarly situated, contrary to what the court found in Alcorn, and contrary to what the Eighth Circuit found in McLean, then that certainly could be, would be an option. But that was not at issue in the district courts holding below. It's much narrower than that. And I think it's worth pointing out that in, for instance, in McLean, there were two separate issues. One was can recognized parties be treated differently or be treated better on the ballot, for instance, than independent candidates. And the answer there under McLean's ruling was yes. But can a ballot order system similar to the one that Florida has, which systematically puts its thumb on the scale in favor of one major party over another, there the answer was no. That violates the right to the equal protection of similarly situated parties. Why is the Secretary of State the proper defendant? Secretary of the State is the chief elections officer, and therefore executes and administers all elections laws. The county supervisors are not, they have to follow the law as provided and as administered. Where in Florida law does it say the Secretary of State has any role whatsoever in the, in this ballot order, in the preparation of the ballot? The Secretary of State, as I understand it, does not actually sit there and print the paper ballots. Who does? The county supervisors do the actual printing. All right. So where is there anything in Florida law that says that the Secretary of State can supervise them in the performance of that work and tell them, no, you're doing it wrong and you have to do it this way, and would have any power to make that happen? I believe that as the chief election, what this court found in Lee's, as the chief elections officer, the Secretary of State has the authority to administer election laws. And in the ballot ordering statute itself, section 9a says, the Department of State shall adopt rules prescribing a uniform primary and general election ballot for each certified voting system. It talks about enforcing the rules and then one of the matters included in those rules is number two, individual race layout. What about that? That the Secretary basically has authority to determine those. To promulgate the rules for a uniform primary and general election ballot for each voting system. Exactly, Your Honor. And in fact, during the state proceeding before the district court, the Secretary's counsel specifically said that the Secretary has, you know, is working on an administrative rulemaking procedure to govern ballot order in the event that the legislature fails to do so. So clearly the Secretary does have authority, believes she has authority, has acted on that authority, and maybe in fact is prepared to act on that authority again. I think it's... Let me... Doesn't actually do it? So, I mean, so the legislature prescribes rules for all kinds of things, but that doesn't make the legislature the minister that executes the law. Right. The Secretary is the one who oversees and executes the law. Well, you know, what we just went through was the Secretary having some authority to promulgate regulations. Right. The ones who sounds to me like actually executed are the election supervisors. Who would be bound by the regulations promulgated by the Secretary. Yes, Your Honor. Like they're bound by laws passed by the legislature. It doesn't mean the legislature is a proper defendant. Just like they're bound by the laws passed by the legislature and overseen by the Secretary, Your Honor, enforced by the Chief Elections Officer of the state. I want to bring up one very important point. The Supreme Court has made clear on at least two instances that a state statute can actually violate the Equal Protection Clause where it exacerbates and aggregates known voter biases in favor or against certain groups. The Supreme Court specifically found as much in Mann, dealing with the same bias at issue here. It also found as much in Anderson v. Martin, in which the Supreme Court struck down a Louisiana statute designating the race of each candidate on the ballot. Before you sit down, would you talk about why the evidence was sufficient to show injury, in fact, on the part of Priorities USA, the organizational plaintiff? Absolutely, Your Honor. The organizational plaintiffs had standing on at least three independent grounds as proven at trial. One was direct injury to their electoral prospects and electoral interests. Consistent with Crawford, consistent with Benisek in the Fifth Circuit, consistent with Schultz in the Second Circuit and Owen in the Ninth Circuit. That direct injury alone is sufficient to confer standing on the organizational plaintiff. Two plaintiffs. Two, the organizational plaintiffs established that they expend resources and have diverted resources in order to combat the ballot order statute and the deficit that they experience as a result of the ballot order statute. The district court found that as a matter of fact. That testimony was provided at trial to that effect. Do you have to say what specific resources and how much they expended? No. In fact, in Crawford, the court specifically emphasized that the fact that it's not been estimated and the fact that it's slight does not have anything to do or take anything away from standing. And third, Your Honor, is the associational standing that they had to represent their candidates and the voters' interests whom they represent. And the district court found all of that. For all the reasons stated here and we respectfully request the district court, that this court affirm the district court's ruling. Thank you. We'll hear from the Secretary. Your Honor, I'd like to pick up where my friend, Ms. Connell, left off. On the injury issue, I would point the court to the testimony of Ms. Williams, the only corporate rep who testified at trial. It appears on page 99 of the transcript. When asked what resources she expected to shift because of the ballot order statute and the primacy effect, she said she could not quantify those resources that are shifted due to the primacy effect. I would also like to discuss briefly the issue of man. As the Texas Brief points out, nearly 40 percent of the states have some version of a statute that lists candidates because of a prior election. If man controls, and what we're saying is that 40 percent of the state's ballot order statutes are unconstitutional. Man doesn't have that broad a scope. I would point the court to Justice Alito's statement in Comptroller of the Treasury v. Wynn, 575 U.S. 542, where he said, a summary affirmance is an affirmance of the judgment only. No rationale may be gleaned from it. And, Your Honor, discuss with my friend that man is distinguishable for other reasons. Your Honor, this issue about how gerrymandering is inherently partisan and ballot ordering is inherently nonpartisan doesn't pass muster. As a textual matter, gerrymandering and the ballot ordering that we have here are both rooted in the elections clause that defers to the political branches, this decision of how we're going to go about doing things. In a gerrymandering context, the state legislature could just draw grids that are inherently nonpartisan. But that's not what they do. We defer to them. In a ballot ordering scheme where we have a complicated set of overlapping requirements in the third largest state in the union with 9 million voters, where people vote in 67 counties spread across over 6,000 precincts in two time zones in three languages, perhaps this is something that the state legislature and the elections officials should get a say on. How to go about ordering the ballot and not have the courts be put in a position where the courts are dictating which of the alternatives makes the most sense. Now, the court at the district court, pardon me, at the motion for state hearing talked about how the district court would perhaps require an alphabetical ordering. All right. Tell me this. Why is the secretary, are you not saying wrong defendant? Is it because the secretary of state thinks the secretary of state is the right defendant? No, Your Honor. We do not think we're the right defendant. We have made this argument on several occasions in other contexts. And quite frankly, in the Northern District of Florida, we have not succeeded and we have not pressed the issue here. But as Your Honor pointed out, this is a threshold jurisdictional issue to Judge Pryor's question about the state's ballot uniformity rule. We have a ballot uniformity rule that says and provides guidelines to the supervisors on how to set their ballots. However, I would refer the court to Christina White's testimony where she says, Miami-Dade County supervisor, she's responsible for setting the ballot, finding a printer, making sure the ballots are printed on time, making sure she has adequate resources to put these ballots in front of voters. But that's just ministerial. If there's a prescribed form for, as the statute says, individual race layout, she's just printing it, right? Well, Your Honor, she is printing it and there is a lot of latitude given on how we print this. As you recall, in the 2018 election. But not with respect to the order of the name. Does she have discretion regarding the order of the names on the ballot? No, Your Honor. She does not have discretion when it comes to the order of the names on the ballot. But there is a lot of discretion on, say, whether or not the name should be in the left column. Well, what does that mean? That portion of the statute that says the rules shall incorporate the requirements in this section and shall prescribe additional matters and forms that include, without limitation, individual race layout. So, Your Honor, after the primary, we have a ballot order that the state provides to the supervisors and they set their ballots choosing their preferred printer, their preferred software, their preferred machines that have all been approved. And then they design and set the ballot per the order that's provided by the state. Thank you. Thank you, Your Honor. Thank you. We have your case. We're going to move on to the next one.